563 A.2d 548

**LEHIGH VALLEY POWER COMMITTEE; Airco Industrial Gases, a Division of the BOC Group, Inc.; Keystone Cement Company; Lone Star Industries, Inc.; Mack Trucks, Inc.; Owens–Illinois, Union Carbide Corporation and Zinc Corporation of America, Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 1988.

Decided June 29, 1989.

David M. Kleppinger, Richard S. Kahlbaugh, McNees, Wallace & Nurick, Harrisburg, for petitioners.

Lee E. Morrison, Asst. Counsel, Bohdan R. Pankiw, Deputy Chief Counsel, Daniel P. Delaney, Chief Counsel, Harrisburg, for respondent.

Paul E. Russell, David J. Dulic, Asst. Counsels, Allentown, David B. MacGregor, Paul R. Bonney, Wayne R. Dillaghey, Morgan, Lewis & Bockius, Philadelphia, for PP & L.

Irwin A. Popowsky, Sr. Asst. Consumer Advocate, David M. Barasch, Consumer Advocate, Office of Consumer Advocate, Phillip F. McClelland, Asst. Consumer Advocate, Harrisburg, for Office of Consumer Advocate.

Before CRUMLISH, Jr., President Judge, CRAIG, DOYLE, BARRY, COLINS, PALLADINO and SMITH, JJ.

COLINS, Judge.

Lehigh Valley Power Committee (LVPC)[1] petitions for review of an order of the Pennsylvania Public Utility Commission (Commission) which dismissed LVPC's complaint

1. LVPC characterizes itself as an ad hoc association of energy intensive industrial customers of Pennsylvania Power and Light Co. (PP & L). Its members include: Airco Industrial Gases, a division of The BOC Group, Inc., Keystone Cement Co., Lone Star Industries, Inc., Mack Trucks, Inc., Owens–Illinois, Union Carbide Corp., Zinc Corporation of America. We note that in its brief to this Court, LVPC lists Hercules Cement Co. as one of its members. However, our examination of the petition for review reveals that Hercules Cement Co. is not listed as a petitioner and we, therefore, shall not consider it as such. *See* Pa. R.A.P. 1513.

filed in opposition to an Energy Cost Rate (ECR) filing of PP & L.[2] We affirm.

## I. PROCEDURAL HISTORY

PP & L filed a preliminary ECR with the Commission on November 1, 1987 and a final ECR on December 1, 1987. On December 9, 1987 PP & L submitted a downward revised ECR. Payments to qualifying facilities (QFs) for energy delivered during the period were included in the ECR.[3] On December 11, 1987, LVPC filed a complaint against the ECR filing. In its complaint, LVPC's principal objection was to PP & L's recovery of payments made to QFs through the ECR when such payments "substantially exceed the present level of avoided costs." (LVPC Complaint at 3.) LVPC requested that the Commission suspend or reject the effective date of the revised ECR filing and conduct full evidentiary hearings to examine the reasonableness and lawfulness of the proposed rates. At its public meeting of December 17, 1987, the Commission approved

2. Section 1307 of the Public Utility Code (Code), 66 Pa.C.S. § 1307, provides for the ECR mechanism which enables:
 utilities to recover specific energy costs not covered by general rates, by allowing collection of rates based on projected cost data from the calendar year.... The ECR determines, therefore, the amount per kilowatt hour which the customer pays in addition to the base rate. Undercollections and overcollections of realized energy costs are reconciled annually.
 *Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission*, 501 Pa. 71, 75–76, n. 3, 459 A.2d 1218, 1220, n. 3 (1983).

3. The preliminary ECR was filed as part of an overall rate reduction calling for a reduction in base rates but an increase in the ECR. PP & L's "Pioneer Rate" was proposed in its April, 1981 tariff supplement and was approved by the Commission to become effective June 15, 1981. That tariff provided for payments of 6 cents/kwh or the average of interchange sales and purchases if higher, to qualifying facilities (QFs) using renewable resources. *Supplement No. 79 to Tariff Electric–Pa. P.U.C. No. 198,* Docket No. R–811515 (order entered May 26, 1981).
 Qualifying facilities are cogeneration facilities or small power production facilities which meet the criteria contained in the Federal Energy Regulatory Commission's regulations, codified at 18 C.F.R. Part 292. 52 Pa.Code § 57.31.

PP & L's revised ECR filing, allowing it to become effective January 1, 1988.

On January 4, 1988, PP & L filed an Answer to LVPC's complaint, a Motion to Dismiss and a Memorandum of Law in support thereof. PP & L posited several reasons for dismissal of the complaint. First, it noted that the Commission had specifically approved the rates and ECR recovery of the amounts paid in the matter of *Re: Pennsylvania Power and Light Co. (Joint Petition)*, 61 Pa.P.U.C. 577 (1986).[4] Further, it argued that whether payments exceeded current avoided costs was irrelevant since the Public Utility Regulatory Policies Act of 1978[5] (PURPA), rules promulgated by the Federal Energy Regulatory Commission (FERC)[6] and the Commission's regulations promulgated pursuant thereto,[7] required utility purchases from

4. On May 14, 1986, PP & L and several QFs filed a Joint Petition with the Commission requesting a declaratory order that would *inter alia* find the rates paid to the QFs to be in the public interest and allow recovery of the rates paid on a current basis through the ECR, or its future equivalent. LPVC filed an Answer to the Joint Petition on June 3, 1986, therein objecting to automatic pass-through to ratepayers of all payments to QFs when such payments exceed actual avoided costs. PP & L filed a reply to LPVC's Answer, noting therein that the Commission had previously approved ECR recovery of levelized payments above current avoided costs. *See Re Pennsylvania Power and Light Co. (Hammermill)*, 59 Pa. P.U.C. 40 (1984) (Commission authorized full pass-through of all energy charges resulting from agreement between PP & L and Hammermill Paper Co., a QF, through the ECR, or its future equivalent).

 The Commission considered LVPC's contentions and rejected them. The Commission held that PP & L was entitled to recover all payments to the QFs listed in the Joint Petition, for electric energy purchases pursuant to the rate set forth in Appendix A to the Joint Petition, on a current basis through the ECR or its future equivalent.

5. P.L. 95–617, 92 Stat. 3117 (1978), codified primarily in 16 U.S.C. §§ 791a note, 796, 823a, 824a, 824d, 824i–824k, 824(b), 824(e), 825d, 2601–2603, 2611–2644, 2701–2708 and 2645.

6. Section 210(a) of PURPA directs FERC to promulgate rules to encourage cogeneration and small power production. FERC fulfilled this mandate in two rulemakings. *See* 45 Fed.Reg. 12214 (February 25, 1980) and 45 Fed.Reg. 17957 (March 20, 1980), codified at 18 C.F.R. §§ 292.101–292.602. For a thorough discussion of the policy underlying PURPA *see Barasch v. Pennsylvania Public Utility Commission*, 119 Pa.Commonwealth Ct. 81, 546 A.2d 1296 (1988).

7. The Commission has implemented the FERC rules through its adoption of regulations contained in 52 Pa.Code §§ 57.31–57.39.

QFs based upon projections. PP & L also noted that compelling policy reasons support the rates paid to QFs and the recovery of those payments by PP & L and that binding contracts were entered into between QFs and itself in reliance on prior ECR recovery orders of the Commission. PP & L further contended that collateral estoppel prevented relitigation of identical claims previously made by LVPC and rejected by the Commission in the *Joint Petition* proceeding. Finally, PP & L submitted that since LVPC was in essence objecting to payments that exceed current avoided costs, a result specifically contemplated in the Commission's regulations, LVPC was impermissibly seeking a change in those regulations via a complaint proceeding.

In its Answer to Motion to Dismiss, filed on January 14, 1988, LVPC maintained that it did not allege that the payments to QFs were unreasonable, but rather, that payments above *current* actual avoided energy costs should not be recovered from rate payers; that the Commission had not specified how or when payments should be recovered; that the Commission's policy of permitting full and immediate recovery through the ECR placed the risk of projections on ratepayers; that collateral estoppel was not applicable since LVPC was a party to only one of three prior proceedings [8] and because the issues raised in the complaint were different than those litigated previously; and, that ECR recovery above *current* avoided costs is at odds with PURPA and FERC regulations.

In his Recommended Decision issued on January 21, 1988, Administrative Law Judge Joseph J. Klovekorn determined that LVPC's complaint should be dismissed without evidentiary hearings pursuant to Section 703(b) of the Public Utility Code (Code), 66 Pa.C.S. § 703(b). The ALJ concluded that no reasonable grounds existed for investigating the

8. These three proceedings include the *Joint Petition* proceeding, *Collection of Amounts Paid for Energy Purchases from Bethlehem Steel Corp., from PP & L Ratepayers,* Docket No. P–850039 (order entered June 25, 1985) and, *Request of Pennsylvania Power and Light Co. for Approval of Collection of Amounts Paid for Energy Produced by Harrisburg Energy Company, from PP & L Ratepayers,* Docket No. A–001062334 (orders entered August 28, 1985 and September 9, 1985).

complaint and stated that the Commission had previously determined that the rates paid by PP & L to QFs were reasonable in prior orders and had approved ECR recovery of the same payments attacked in the complaint. In addition, he determined that the Commission had already considered and rejected the same arguments, raised by LVPC in the *Joint Petition* proceeding. Therefore, the ALJ concluded that collateral estoppel prevented relitigation of the same issues. Finally, quoting the language of Section 316 of the Code, 66 Pa.C.S. § 316,[9] the ALJ pointed out that the order of the Commission in the *Joint Petition* proceeding, which authorized PP & L to recover payments for energy purchased pursuant to specified rates through the ECR, had not been appealed by LVPC or any other party and, therefore, remained conclusive upon all parties to the prior proceeding including LVPC.

LVPC and the Office of Consumer Advocate (OCA) which had intervened in the ECR filing, filed exceptions to the ALJ's Recommended Decision. On April 5, 1988, the Commission entered a final order which adopted the ALJ's Recommended Decision dismissing LVPC's complaint. LVPC filed a timely Petition for Review with this Court. OCA has intervened on behalf of LVPC and PP & L has intervened on behalf of the Commission.

Our scope of review is, of course, limited to a determination of whether constitutional rights have been violated, or an error of law has been committed, or whether the Commission's findings, determinations or order are supported by substantial evidence. *United States Steel Corp. v. Pennsylvania Public Utility Commission,* 69 Pa.Commonwealth Ct. 134, 450 A.2d 1073 (1982).

■ The Commission is vested with the discretion to dismiss a complaint under Section 703 of the Code, 66 Pa.C.S. § 703. A decision to dismiss a complaint without

9. That section provides, *inter alia,* that all orders of the Commission shall remain conclusive upon all parties affected thereby, unless set aside, annulled or modified on judicial review.

holding hearings will be reversed by this Court only if there was an abuse of discretion. *Id.*

LVPC first submits that the Commission erred in its application of the doctrine of collateral estoppel and, therefore, improperly dismissed LPVC's complaint. The second issue raised for review is whether LVPC's due process rights were violated by the Commission's approval of full and immediate pass-through of purchased power costs to ratepayers without affording LVPC a hearing. LVPC requests that this Court remand for a hearing on its complaint so that the Commission may limit PP & L's recovery of payments to QFs to PP & L's current avoided cost and reconcile any over or underrecovery based upon a comparison of the amount collected to the current actual avoided cost. For the reasons which follow, we reject both of LVPC's contentions and decline to grant the requested relief.

## II. DISCUSSION

### A. *The Federal Law Setting*

We begin our analysis of the issues involved by noting that some discussion of PURPA and the applicable FERC rules, is necessary. The express intent of PURPA is to encourage cogeneration and small power production. Under Section 210(a) of PURPA, 16 U.S.C. § 824a–3(a), utilities are required to purchase power from QFs.[10] Section 210(b) of PURPA, 16 U.S.C. § 824a–3(b) affords to FERC some flexibility in setting the rates to be paid to QFs by utilities. It provides:

(b) Rates for purchases by electric utilities

10. Utilities are hostile to non-utility generation. Utilities earn a return only on their property which is used and useful in producing and delivering power. The utilities earn no return on costs, such as those incurred to purchase fuel or power from other sources such as QFs. The enactment of PURPA flowed from the awareness that utilities are hostile to non-utility generation since such generation is clearly in competition with the utilities and displaces generation plant the utility would add to rate base, or power purchases from sister utilities.

The rules prescribed under subsection (a) of this section shall insure that, in requiring any electric utility to offer to purchase electric energy from any qualifying cogeneration facility or qualifying small power production facility, the rates for such purchase—

(1) shall be just and reasonable to the electric consumers of the electric utility and in the public interest, and

(2) shall not discriminate against qualifying cogenerators or qualifying small power producers.

No such rule prescribed under subsection (a) of this section shall provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy.[11]

In *Federal Energy Regulatory Commission v. Mississippi*, 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982), the U.S. Supreme Court upheld the constitutionality of Section 210 of PURPA as a valid exercise of Congress' power under the Commerce Clause to act in what the Court previously had determined to be a fully pre-emptible field. The Court determined that the grant of power to FERC to exempt QFs from state laws and regulations was a form of traditional pre-emption. In addition, as this Court acknowledged in *Barasch*, the Supreme Court held that there was no intrusion upon state sovereignty in violation of the Tenth Amendment since FERC allowed the states "to implement PURPA by designating their regulatory agencies for the adjudication of disputes arising under the statute—the very type of activity customarily engaged in by those authorities." *Barasch*, 119 Pa.Commonwealth Ct. at 87, 546 A.2d at 1299.

FERC adopted a rule relating to purchases of power by utilities from QFs which requires a rate of payment to QFs equal to the utility's "full avoided cost" (FAC). 18 C.F.R. § 292.304(b)(2). "Avoided costs" are "the incremental costs

11. The incremental cost of alternative electric energy is defined in Section 210(d) of PURPA, 16 U.S.C. § 824a–3(d) as "the cost to the electric utility of the electric energy which, but for the purchase from such cogenerator or small power producer, such utility would generate or purchase from another source."

to the electric utility of electric energy or capacity or both which, but for the purchase from the [QF] or [QFs], such utility would generate itself or purchase from another source." 18 C.F.R. § 292.101(b)(6).[12]

In *Barasch*, this Court stated that FERC, prior to promulgating this rule:

considered and expressly rejected proposals that the rates it prescribed pursuant to section 210 should result in some savings to utility customers. Rather, FERC preferred to allocate the full savings typically realized by the cogeneration and small power production processes to the alternative producers themselves, noting that this allocation would provide the maximum encouragement of development of these resources, and that 'ratepayers and the nation as a whole will benefit from the decreased reliance on scarce fossil fuels, such as oil and gas, and the more efficient use of energy.' 45 Fed.Reg. 12222.

*Id.*, 119 Pa. Commonwealth Ct. at 88, 546 A.2d at 1299.

FERC's decision to require a rate for utility purchases from QFs equal to FAC, i.e. its determination that FAC is just and reasonable and in the public interest, was upheld as a proper exercise of its authority under Section 210 of PURPA by the U.S. Supreme Court in *American Paper Institute, Inc. v. American Electric Power Service Corp.*, 461 U.S. 402, 103 S.Ct. 1921, 76 L.Ed.2d 22 (1983). The Supreme Court found that Congress did not intend that the terms "just and reasonable" in Section 210(b) of PURPA, with regard to rates for purchases by electric utilities from QFs, be interpreted according to its traditional ratemaking meaning.[13] *Id.* at 414–15, 103 S.Ct. at 1928–29.

Pursuant to 18 C.F.R. § 292.301, utilities and QFs may negotiate a rate lower than FAC in purchase power agree-

**12.** Pursuant to 18 C.F.R. § 292.304(b)(1) and (3), the rate may be less than FAC when it is based on costs of facilities whose construction was started prior to November 9, 1978, the effective date of PURPA.

**13.** However, the Supreme Court determined that Congress did intend that those terms, as used in Section 210(c), which concerns *sales* by utilities to QFs, be interpreted in the traditional sense.

ments. The Commission regulations implementing FERC's rules are consistent with that rule.

## B. *Timely Rate Recovery*

It is clear from the previous discussion of the federal law that PP & L *must* enter into contracts with QFs. It is also patently clear that FERC's rule requiring payment to QFs at FAC has been upheld as being just and reasonable. The Commission submits that the utilities must be able to recover, in a timely manner, the costs which they must, by federal mandate, incur.

As noted previously, FAC pricing is equal to the incremental costs a utility would otherwise incur but for the purchase of energy from the QFs. 18 C.F.R. §§ 292.-101(b)(6), 292.304(b)(2). The FAC rule is based upon the theory that whether a utility's highest energy cost is from its own production or purchases from sister utilities, it would first eliminate its most expensive energy in purchasing power from QFs. As QFs increase in size as well as number, they will displace decreasing cost energy. However, it is important to note that as utilities enter into contracts with successive QFs which will displace energy that is less expensive than the energy displaced by contracts with earlier QFs, the utilities real avoided costs at any particular point in time are the incremental costs it would have paid *without* all of the QFs.

As a utility contracts with successive QFs, its actual energy costs in each year will be lower than if the QFs were not present. However, contrary to LVPC's contention, these are not the avoided costs against which payments to existing QFs are comparable. The avoided costs are energy costs *that would have occurred absent the existence of the QFs.*

Under 18 C.F.R. § 292.304(b)(5) and (d), QFs have the right to demand long-term contracts based upon projections of avoided costs. 18 C.F.R. § 292.304(b)(5) explicitly provides that "[i]n the case in which the rates for purchases are based upon estimates of avoided costs over the specific

term of the contract or other legally enforceable obligation, the rates for such purchases do not violate this subpart if the rates for such purchases differ from avoided costs at the time of delivery.

In the preamble to its rulemaking at 45 Fed.Reg. 12224, FERC indicated that the levelization of payments over the contract term, so long as they did not exceed the estimated avoided costs, was permitted. Levelization results in the cumulative projections of estimated avoided costs being converted into a payment stream to the QFs with higher early year payments and lower later year payments. The Commission's regulations are consistent with this FERC rule. *See* 52 Pa.Code § 5734(b)(2)(iii).

As is pointed out by the Commission in its brief filed with this Court, even though a QF may negotiate a contract with a utility which provides for payments lower than a utility's projected avoided costs, pursuant to 18 C.F.R. § 292.301 and 52 Pa.Code § 57.32(c), the QF is still entitled to request levelized payments under FERC rules and Commission regulations. The utility will be required to make such payments without regard to energy cost levels it subsequently experiences.

FAC includes avoided costs for long-term purchases, based upon projections made when the obligation was incurred, and levelized to provide higher early year payments. Pursuant to 18 C.F.R. § 392.304(b)(5), FAC includes all such payments irrespective of whether they are higher than subsequently experienced energy costs. We agree, as the Commission suggests, that neither this Court, the Commission, utilities, nor ratepayers has the power to determine that such payments to QFs are anything but just and reasonable.

The Commission submits that a necessary corollary to the obligation imposed by federal law to make these payments to QFs, is the utility's right to recover the payments through full and current pass-through through the ECR to ratepayers. It is submitted that denial of such rate recovery would conflict with the scheme established under Sec-

tion 210 of PURPA and would inhibit development of QFs in contravention of the purpose underlying PURPA. The likely result of such denial would be utility refusal to enter into contracts with QFs or utility insistence upon "regulatory out" clauses which would require reduction of the contract price, to the extent the Commission would disallow full pass-through. The Commission has noted that such action would certainly inhibit the development of QFs. *See Petition of Pennsylvania Electric Co. Re Scrubgrass Power Corp.*, Docket No. P–870248 (order entered January 21, 1988).

In *AES Beaver Valley, Inc. v. West Penn Power Co.* Docket No. C–844022 (order entered March 13, 1985), the Commission addressed ECR recovery:

[t]o require the utility to make the payment to the [QF] on one hand and deny short-term recovery of the identical amount on the other would be illogical. It must be recognized that, even if one could separate an amount to be placed in rate base in a transaction with a [QF], a utility's rate of return on that amount would vary over time. Thus there would be a mismatch between the amount of payment to the [QF] and the amount received from the utility's ratepayers. This amount could be higher as well as lower than the amount paid to the [QF]. It is the intent of the federal scheme and the commission's regulations that a utility should neither be disadvantaged nor should it make a profit on purchases from [QFs]. This is certainly not the same situation as the utility adding its own plant. In that case, the return the utility makes can vary because it is simply the amount which the utility is entitled to by virtue of its investment. In other words, there is no contractual obligation on the part of the utility to make set payments for each kilowatt hour produced from the plant it has added. However, when a utility is making purchases from the [QF] it does have a contractual obligation to pay a certain amount for each kilowatt hour. Therefore, this amount and no more or less is the amount the utility should recover from its

ratepayers. Through the years of development of Commission regulations, no alternative method of cost recovery has appeared to provide a matching of payments with cost recovery from ratepayers. Thus, recovery through the ECR is not only the appropriate mechanism, it is the *only* mechanism which allows such matching.

The Commission has consistently allowed utility ECR recovery of costs incurred by the utility's compliance with PURPA. *See e.g. Re West Penn Power Co. (Allegheny Lock and Dam No. 5)*, 62 Pa.P.U.C. 612 (1987); *Re West Penn Power Co. (Allegheny Lock and Dam No. 6)*, 62 Pa.P.U.C. 606 (1987); *AES Beaver Valley, Inc. v. West Penn Power Co.*, 62 Pa.P.U.C. 177 (1986).

Thus, the issue which was presented to the Commission in both the *Joint Petition* proceeding and the instant complaint proceeding was essentially a legal one which had been decided by the Commission. This conclusion leads us to a discussion of whether the Commission's decision to dismiss LVPC's complaint without a hearing constituted an abuse of discretion.

## C. *Collateral Estoppel*

Professor Davis has stated that "[t]he reasons against a second litigation between the same parties of the same claims or issues are precisely the same for some administrative determinations as they are for most judicial determinations." In this administrative proceeding, the reasons for application of collateral estoppel are present.

■ A plea of collateral estoppel is valid if (1) the issue decided in the prior adjudication is identical with the one presented in the later action; (2) there was final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and a fair opportunity to litigate the issue in question in a prior action. *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975).

 The essential issue raised by LVPC in the *Joint Petition* proceeding was whether utility payments for energy purchased from QFs were automatically recoverable through the ECR mechanism. In that proceeding, the Commission, in discussing cost recovery of rates paid to QFs, noted that it had previously held that utility payments for energy purchased from QFs up to the utility's FAC are automatically recoverable through the ECR. The Commission noted that LVCP's position was also addressed in its decision in *AES Beaver Valley, Inc. v. West Penn Power Co.*, Docket No. C–844022 (order entered March 13, 1985), and rejected LVPC's contention that some capacity payment must be involved in the rates being paid to the QFs. It further stated:

> the answer of LVPC ignores the existence of federal and state regulations that allow [QFs] to receive rates based on estimates of avoided costs over the contract term, even if those payments differ from actual avoided costs.

> With regard to payments in the early years of such contracts exceeding short-term avoided costs, both the FERC regulations (18 C.F.R. § 292.101 *et seq.*, specifically, 18 C.F.R. §§ 292.304(b)(5) and (d), and Commission regulations, (52 Pa.Code § 57.31 *et seq.*), entitled [QFs] to a known stream of payments and to 'levelized' payments. As long as payments, over the contract term, equate to a reasonable approximation of [FAC], they are reasonable. *A fortiori*, such levelized payments which are *below full avoided costs are likewise reasonable.*

*Joint Petition*, 61 Pa. P.U.C. at 585. Accordingly, the Commission ordered that ECR recovery of amounts paid to QFs was entirely appropriate.

The same issue has been presented for review by LVPC in its complaint to PP & L's ECR filing. Although its argument is couched in different terms, the argument is essentially the same as that presented in the *Joint Petition* proceeding. LVPC is once again alleging that ECR cost recovery of the rates paid to QFs by PP & L is not

warranted. This issue was considered and rejected by the Commission in the *Joint Petition* proceeding.

LVPC submits that subsequent modifications of significant facts and legal principles have rendered the Commission's decision in the *Joint Petition* proceeding obsolete. Therefore, LVPC contends that litigation of the issues raised in its complaint is necessary. We disagree. Our review of this matter indicates no significant change in factual circumstances or legal principles.

LVPC cites *Re: Orange & Rockland Utilities, Inc.,* Docket No. EL87–53–000 (order entered April 14, 1988). In that case, FERC held that states were no longer free to set rates in excess of avoided cost (i.e., essentially reversing that portion of the preamble to its February 25, 1980 rulemaking which had previously allowed the states to do so.) However, as pointed out by the Commission, the decision expressly upheld the proposition that a rate which reflects a reasonable approximation of avoided costs at the time of the contract complies with PURPA. We can ascertain no significant change in legal principle which would impact upon this matter.

There is no question that the second and third elements of collateral estoppel are met. The Commission entered a final order in the *Joint Petition* proceeding allowing cost recovery on a current basis through the ECR or its future equivalent. LVPC participated in the *Joint Petition* proceeding by way of filing an answer to the petition. It is a party to the instant proceeding by way of its filing of a complaint against the ECR filing of PP & L.[14]

 Finally, we turn to the issue of whether LVPC had a full and fair opportunity to litigate the issue in question in the *Joint Petition* proceeding. LVPC submits that because

14. The Commission asserts, and we agree, that the fact that LVPC was not a party to all three prior proceedings does not bar the application of collateral estoppel. It would be absurd to require the Commission to address the same argument from the same party in every such proceeding in order to allow ECR recovery of amounts paid to QFs. This is unnecessary, especially, where the party is asserting a right to evidentiary hearings in every proceeding on a purely legal issue.

its opportunity to litigate the issue was limited to its filing of an answer, that it was not afforded a meaningful opportunity to be heard. We disagree. The issue presented in LVPC's answer was a legal one. LVPC's contention that it should have been afforded the opportunity to present evidence is therefore meritless. It is a fundamental proposition of law that a hearing or trial procedure is necessary only to resolve disputed questions of fact and is not required to decide questions of law, policy, or discretion. *See* Davis, *Administrative Law Treatise*, §§ 12:2, and 14:1–14:3 (1979–80). LVPC was provided the opportunity to present argument on this issue and the Commission considered and rejected LVPC's contentions in its discussion in the *Joint Petition* proceeding. LVPC filed no appeal of the order in the *Joint Petition* proceeding. As the ALJ noted in his Recommended Decision, Section 316 of the Code, 66 Pa.C.S. § 316, precludes collateral attack on orders which have not been set aside, annulled or modified on judicial review. The Commission's order in that proceeding, which has not been appealed by any affected party, remains conclusive upon all parties to the prior proceeding, including LVPC.

Accordingly, we must conclude that the elements of collateral estoppel have been properly met and that the Commission, therefore, did not abuse its discretion in dismissing LVPC's complaint on that basis.

### D. *Due Process*

We shall now address the issue of whether LVPC's due process rights were violated by the Commission's dismissal of its complaint without a hearing. LVPC had the opportunity to present its argument on this purely legal issue in its complaint filed with the Commission in this matter. LVPC seems to suggest that for due process to be fulfilled, a hearing is always necessary. However, as pointed out by the Commission, Section 703(b) of the Code, 66 Pa.C.S. § 703(b), would be meaningless if the Commission were required to hold a hearing on every complaint filed. Because we conclude that the question presented to the Commission was a legal issue which had been previously

decided by the Commission, we must conclude that the dismissal of the complaint without a hearing was proper.[15]

### E. *Conclusion*

The Commission's application of the doctrine of collateral estoppel and dismissal of the complaint absent a hearing was not an abuse of discretion. The order of the Commission is affirmed.

PALLADINO, J., dissents.

### ORDER

AND NOW, this 29th day of June, 1989, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

---

**15.** The procedural context of this case does not afford to this Court the opportunity to go beyond deciding whether the dismissal of LVPC's complaint was proper. We recognize that the FERC rules do not explicitly *mandate* automatic pass-through to ratepayers. However, the Commission has allowed full recovery through the ECR because it has determined that to do otherwise would be inconsistent with the purpose underlying PURPA. LVPC questioned the propriety of that action in the *Joint Petition* proceeding and did not appeal the Commission's order upholding pass-through. Our task here is limited to determining whether an abuse of discretion has occurred.