593 A.2d 1333

**LEHIGH VALLEY POWER COMMITTEE, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1991.

Decided June 24, 1991.

David M. Kleppinger, Harrisburg, for petitioner.

Billie Ramsey, Harrisburg, for respondent.

Merrill L. Kramer, Washington, D.C., for intervenors.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

CRAIG, President Judge.

Lehigh Valley Power Committee (LVPC), an ad hoc association of energy intensive industrial customers of Pennsylvania Power and Light Company (PP & L), appeals from an order of the Pennsylvania Public Utility Commission (PUC) granting PP & L's petition for a waiver of fuel use standard in its contract with Continental Energy Associates (CEA), a "qualifying facility" (QF) for the purposes of § 210 of the federal Public Utility Regulatory Policies Act of 1978 (PURPA).[1] The PUC granted PP & L's petition for waiver because the PUC stated that PP & L's proposed waiver of fuel use standards does not affect rates and PUC approval is unnecessary for waiver of nonprice terms. We vacate and remand.

1. 16 U.S.C. § 824a-3.

The issues in this case are (1) whether LVPC has standing to challenge PP & L's petition, and (2) if LVPC has standing, whether the PUC erred in treating PP & L's petition for waiver as a nonprice, nonreviewable request not requiring PUC approval.

## Background

Section 210 of PURPA, 16 U.S.C. § 824a–3, is designed to lessen the dependence of electric utilities on foreign oil and natural gas by encouraging the development of alternative power sources. Section 210(a) directs the Federal Energy Regulatory Commission (FERC) to promulgate rules encouraging the development of alternative services and requires that utilities purchase power from QFs. Section 210(b) directs FERC to set reasonable rates for utility purchases of power from QFs. Section 210(f) requires each state's regulatory authority to implement FERC's regulations; in some areas, § 210 gives state agencies wide authority to address regional circumstances.

The regulation adopted by FERC relating to purchases of power by utilities from QFs requires a rate of payment equal to the utility's full avoided cost (FAC), 18 C.F.R. § 292.304(b)(2). FERC defines "avoided cost" as "the incremental cost to the electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source." 18 C.F.R. § 292.101(b)(6).

FERC's regulatory scheme permits utilities and QFs to negotiate agreements for utility purchases of power independently of FERC regulations. However, FERC regulations require that utilities file detailed cost data and projections with the state regulatory authority. The PUC may disallow these rates if they are not "reasonable." In Pennsylvania, the PUC deems rates at or below FAC as "per se" reasonable. Thus, many utilities submit their purchase power agreements to the regulatory authority *before* signing the contract with the QF, because utilities fear that a

regulatory agency may disallow the rate which utilities and QF's privately negotiate. In the present case, the parties submitted their purchase power agreement to the PUC for PUC approval in the hope that PUC pre-approval would obviate a rate reduction by the PUC in the future.

### History of the Proceedings

In 1985, PP & L signed an agreement with CEA to purchase output (up to 100 megawatt hours per hour) from CEA's generating facility located in the Humboldt Industrial Park, Hazleton, Pennsylvania. The CEA facility can use natural gas, No. 2 oil or coal gas as fuel. The coal gas is to be produced by gasification of anthracite culm, a waste byproduct of the anthracite mining operations.

In 1986 the PUC issued a declaratory order specifically approving PP & L's rate recovery mechanism, known as the energy cost rate (ECR)[2] and the "culm rate," which the PUC stated as 6.0 cents for 1989–1995 and 6.6 cents for 1996 and thereafter. (*See Re: Pennsylvania Power and Light Co. (Joint Petition)*, 61 Pa. PUC 577 (1986)). This court upheld the PUC's order in *Lehigh Valley Power Committee v. Pennsylvania Public Utility Commission*, 128 Pa.Commonwealth Ct. 259, 563 A.2d 548 (1988) and *Lehigh Valley Power Committee v. Pennsylvania Public Utility Commission*, 128 Pa.Commonwealth Ct. 276, 563 A.2d 557 (1988).

Article 5 of the agreement sets forth the rate PP & L is to pay CEA, which is lower than the culm rate approved by the PUC order. Paragraphs B(i) and (ii) of that article state that if CEA uses coal gasification for at least 75% of its

**2.** Section 1307 of the Public Utility Code, 66 Pa.C.S. § 1307, provides for the ECR mechanism which enables

utilities to recover specific energy costs not covered by general rates, by allowing collection of rates based on projected cost data.... The ECR determines, therefore, the amount her [kwh] which the customer pays in addition to the base rate....

*Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission*, 501 Pa. 71, 75–76, n. 3, 459 A.2d 1218, 1220, n. 3 (1983).

total fuel input, PP & L must pay CEA 5.8 cents per kwh. Paragraph B(iii) states, in relevant part:

> If in any contract year during the Term hereof, the Seller no longer uses gasified coal to provide 75% or more of the required fuel as measured on a heat input basis over the contract year, but (1) uses coal derived gas for at least 65% of its fuel input on an annual basis ..., unless through no fault of Seller, coal gasification is found not to be technologically feasible for this Facility, in which case, this requirement is omitted, and it (2) continues to meet applicable efficiency standards for a Qualifying Cogeneration Facility as referred to in Article 3, and (3) if the useful thermal energy output is at least 10% of the total energy output of the Facility; then PP & L will purchase energy in the subsequent contract year at a rate of 5.3 cents ($.053) per KWH. . . .

The first contract year for this agreement was March 19, 1989 through March 19, 1990.

The PUC order entered June 4, 1990, from which LVPC now appeals, is in response to PP & L's petition to waive the fuel use standards set forth in paragraph B(iii) of the agreement. The reason PP & L seeks a waiver of these is because, in the first contract year, CEA used coal-derived gas for less than 65% of its total fuel input. Specifically, PP & L's petition seeks to waive paragraph B(iii) for the first contract year in order to continue to pay, during the second contract year, 5.3 cents per kwh for output purchased from CEA.

LVPC opposes PP & L's petition for that waiver. LVPC asserts that the agreement is binding upon PP & L and CEA and that, because the agreement does not contemplate a rate for the situation when CEA uses less than 65% gasification for its total energy input, PP & L is thereby required to pay CEA its FAC rate at the time of delivery. LVPC and PP & L agree that PP & L's FAC at time of delivery for 1990 was 2.89 cents per kwh. If paragraph B(iii) is not waived, LVPC contends PP & L must pay 2.89 cents per kwh to CEA. PP & L states that if paragraph

B(iii) is not waived, it is "likely" PP & L would pay "at least" 2.89 cents per kwh to CEA.

CEA intervened in the present case, pointing out that the express language of the agreement provides for continued payments at the 5.3 cent rate if, through no fault of CEA, the process is not technologically feasible. The agreement provides that PP & L must pay CEA 5.3 cents per kwh if three requirements are met: (1) CEA uses coal gasification for at least 65% of its total fuel input, (2) CEA continues to meet applicable efficiency standards for a qualifying cogeneration facility, and (3) CEA's useful thermal energy output is at least 10% of the total energy output of the facility. Requirement No. 1 is waived if coal gasification is found not to be technologically feasible for the facility in question. CEA proposes that the PUC should hold a hearing to determine if the 65% fuel use standard is technologically feasible.

On February 8, 1990, CEA filed a petition with FERC requesting a waiver of FERC's operating and efficiency standards applicable to cogeneration facilities. FERC granted the waiver; thus CEA complied with requirement No. 2 of the agreement. The record is unclear as to whether CEA complied with the third requirement, which demands that CEA's total energy output must consist of at least 10% of the useful thermal energy.

The PUC stated in its order that the PUC only reviews *rates* in QF power purchase agreements, and that voluntary changes to nonprice terms in power purchase agreements do not require PUC review. The PUC held that it was unnecessary for PP & L to seek the PUC's advance approval of this proposed waiver, because PP & L sought to waive a nonprice term. The PUC also stated that ratepayers are unaffected by the waiver of the fuel use standards of the agreement because PP & L has not proposed an increase in its rates it is paying to CEA. (LVPC, however, is contending for a reduction in rate.) Although the PUC stated it is not required to act on PP & L's requested waiver of

paragraph B(iii), the PUC did grant PP & L's waiver, ordering:

3. That the Petition of Pennsylvania Power & Light Company ("PP & L") for a Public Interest Determination Regarding a Limited Waiver of ... Fuel Use Standards is granted to the extent consistent with this Opinion.

4. That it is in the public interest for PP & L to waive the fuel use standards, if applicable, set forth in Article 5 of its Agreement with [CEA]....

The PUC also stated that LVPC has no standing to object to the waiver because the waiver has no effect on customers' bills.

Thus, we are presented with two issues: (1) whether LVPC has standing to challenge PP & L's proposed waiver, and (2) whether the PUC's decision to treat PP & L's proposed waiver of its fuel use standards as a nonprice term, and thus nonreviewable, is an error of law.

### LVPC's Standing to Challenge PP & L's Proposed Waiver

The PUC stated in its opinion that LVPC did not have standing because PP & L's proposed waiver of its fuel use requirement did not involve a change in the rate PP & L pays to CEA. LVPC contends, however, that because CEA has not met the terms of the agreement as to fuel use standard, the rates found in the agreement are not applicable and the rates PP & L must charge CEA are PP & L's full avoided costs at time of delivery, which PP & L stated were 2.89 cents per kwh, a lower rate than that which PP & L is paying to CEA.

This court has set forth a three-part test for determining whether a person seeking judicial review of an agency order is entitled to standing:

(1) the party must have a substantial interest which has been adversely affected by the challenged order, meaning that there must be a discernible adverse impact to some interest other than the abstract interest of all citizens in having others comply with the law;

(2) the party's interest must be direct, that is, the harm to its interest must be shown by the matter of which the party complains; and

(3) the party's interest must be immediate and not a remote consequence of an order.

*Middletown Township v. Pennsylvania Public Utility Commission*, 85 Pa.Commonwealth Ct. 191, 209–10, 482 A.2d 674, 685 (1984) (quoting *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975)).

The PUC adopted regulations consistent with FERC in 52 Pa.Code §§ 57.31–57.39. The PUC sets forth three methods for determining the rates that utilities must pay QFs. The first method is based on the utility's FAC at the time of delivery. The second method is based on projected costs from the time the contract is consummated. The third method is based on a utility's levelized projected energy costs. This third method is known as a levelization rate because it results in cumulative projections of estimated avoided costs being converted into a payment to the QFs with higher early year payments and lower later year payments. This court approved levelization payments, recoverable through the ECR, in *Lehigh Valley Power Co. v. Pennsylvania Public Utility Commission*, 128 Pa.Commonwealth Ct. 259, 563 A.2d 548 (1988).

■ The PUC argues that LVPC does not have standing in the present case because it is not aggrieved by the outcome of the proceedings. The PUC asserts LVPC is not aggrieved because this court approved the levelization payment recoverable through the ECR, and PP & L only requests a waiver of the fuel use standard, not a change in the rate PP & L pays CEA.

However, the PUC's argument that this waiver will not affect rates is without support. The PUC's own brief contends that if paragraph B(iii) is not waived, PP & L could pay CEA the approved culm rates of 6.0 cents and 6.6 cents. The PUC points out that the culm rates are not

limited to any particular type of fuel, and the rates could apply even if CEA uses less than 65% coal gasification for its total input. PP & L stated in its brief that if paragraph B(iii) is not waived it is likely under PURPA that PP & L would pay CEA at least 2.89 cents per kwh. LVPC asserts that PP & L would pay to CEA PP & L's FAC at time of delivery, 2.89 cents. Finally, CEA does not offer an alternative if the agreement is waived, but states that PP & L could continue to pay CEA 5.3 cents if the PUC finds that the 65% coal gasification requirement is not technologically feasible at this time.

Thus, LVPC has a substantial interest in the outcome of this case because if the fuel use standard is not waived, the price PP & L pays CEA would be affected, and a rate change affects industrial customers because PP & L's energy purchase cost affects customers when reflected in the ECR.

### PUC Decision to Treat PP & L's Petition for Waiver as a Nonprice, Nonreviewable Term

■ The PUC's decision to treat PP & L's waiver of paragraph B(iii) as a nonprice term is in error. The PUC's own brief admits, and PP & L and LVPC agree, that a waiver of paragraph B(iii) potentially affects the rate PP & L pays CEA.

Having determined that the PUC erred in not reviewing the merits as to the effect of paragraph B(iii), we direct our attention to the express language of the agreement. CEA persuasively argues that the express language of the agreement provides for continued payments at the 5.3 cent per kwh rate if a certain condition is met, namely, if coal gasification is found to be not technologically feasible.

Therefore, this case is remanded for a hearing regarding the technological feasibility of coal gasification. If the PUC determines that the coal gasification requirement is not technologically feasible, the express terms of the contract apply and PP & L may pay CEA 5.3 cents per kwh for 1990. If the PUC determines, after a hearing, that the coal

gasification requirement is technologically feasible, then the PUC must approve a rate not based upon the agreement, which is silent on the issue, but must determine whether to apply the current FAC at time of delivery, the culm rate or any other rate consistent with PURPA as well as Pennsylvania law.

Accordingly, the PUC's determination that LVPC did not have standing in this matter is reversed, the PUC's determination that the fuel use standard in the agreement is a nonprice term nonreviewable by the PUC is vacated, and the case remanded to the PUC for the PUC to hold a hearing to determine whether it is technologically feasible for CEA to use less than 65% coal derivative gas of its total fuel input. If the PUC determines that the coal gasification requirement is not technologically feasible, the express terms of the contract provide for the 5.3 cent per kwh rate. If the PUC determines that the coal gasification requirement is technologically feasible, the PUC must determine the appropriate rate PP & L pays to CEA.

## ORDER

NOW, June 24, 1991, the order of the Pennsylvania Public Utility Commission at No. P–900433, dated June 4, 1990, is vacated, and this case is remanded. The PUC's rulings denying LVPC standing and treating PP & L's waiver of its fuel use standard as a nonreviewable term are reversed. The case is remanded to the PUC for a hearing to determine whether it is technologically feasible for CEA to use at least 65% coal gasification in its total fuel input. If the PUC determines that the coal gasification process is not technologically feasible, PP & L must pay to CEA 5.3 cents per kwh. If the PUC determines that coal gasification is technologically feasible, the PUC must approve a rate.

Jurisdiction relinquished.