

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-1997

# Schuylkill Energy v. PA Power & Light Co

Precedential or Non-Precedential:

Docket 96-1447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"Schuylkill Energy v. PA Power & Light Co" (1997). *1997 Decisions.* Paper 94.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/94

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 5, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1447

SCHUYLKILL ENERGY RESOURCES, INC.,

Appellant

v.

PENNSYLVANIA POWER & LIGHT COMPANY

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-civ-04885)

Argued
February 6, 1997

Before: STAPLETON and MANSMANN, Circuit Judges, and
RESTANI, Judge, Court of International Trade.*

(Filed May 5, 1997)

Richard L. Caplan, Esquire
Mary Huwaldt, Esquire (ARGUED)
Michelle L. Davis, Esquire
Caplan & Luber
40 Darby Road
Paoli, Pennsylvania 19301

 COUNSEL FOR APPELLANT

_____

* Honorable Jane A. Restani, Judge, United States Court of International
Trade, sitting by designation.

Glen R. Stuart, Esquire (ARGUED)
David B. MacGregor, Esquire
Morgan, Lewis & Bockius LLP
2000 One Logan Square
Philadelphia, Pennsylvania 19103

Stephen Paul Mahinka, Esquire
Elizabeth A. Powell, Esquire
Morgan, Lewis & Bockius LLP
1800 M Street, N.W.
Washington, D.C. 20036-5869

OF COUNSEL:

Jesse A. Dillon, Esquire
Pennsylvania Power & Light
 Company
Two North Ninth Street
Allentown, Pennsylvania 18101

 COUNSEL FOR APPELLEE

**OPINION OF THE COURT**

MANSMANN, <u>Circuit Judge</u>.

Schuylkill Energy Resources, Inc., ("SER") filed this antitrust action against Pennsylvania Power & Light Co. ("PP&L") for allegedly monopolizing and attempting to monopolize the provision of electric energy to retail consumers within PP&L's service area and to wholesale resellers affiliated with PP&L. SER contends that PP&L impermissibly curtailed purchases of SER-generated electric energy and that SER was therefore unable to compete with PP&L in the provision of electric energy to consumers in the retail market and resellers in the wholesale market.

The district court granted PP&L's motion to dismiss SER's antitrust claims for failure to state a claim upon which relief can be granted and declined to exercise supplemental jurisdiction over SER's pendent state law

claims. We must decide whether SER has adequately pled antitrust injury. We find that by agreement and by law, SER is PP&L's supplier, not PP&L's competitor, and that PP&L's generation curtailment policy does not create an injury of the type the antitrust laws were intended to prevent. We will affirm.

I.

Under the Federal Power Act, 16 U.S.C. § 791a et seq., any person who owns or operates facilities used to transmit or sell electric energy in interstate commerce is subject to the jurisdiction and regulatory power of the Federal Energy Regulatory Commission ("FERC"). 16 U.S.C. § 824. In 1978, Congress amended the Federal Power Act by passing the Public Utility Regulatory Practices Act of 1978 ("PURPA"). Congress passed PURPA to encourage the development of alternative energy sources in an effort to reduce United States' dependence on foreign oil. Congress believed that the development of alternative energy sources was impeded by the reluctance of traditional electric utilities to purchase energy from and sell energy to non-traditional facilities as well as by the substantial financial burdens imposed on non-traditional facilities by pervasive federal and state regulation. See FERC v. Mississippi, 456 U.S. 742, 750-51, 102 S.Ct. 2126, 2132-33 (1982) (citing legislative history of PURPA).

To further this goal, PURPA requires electric utilities to purchase electric energy produced by independent power producers operating so-called "qualifying cogeneration facilities." See 16 U.S.C. §§ 796(18)(B), 824a-3. Congress directed FERC to promulgate rules and regulations governing the terms of such purchases and sales, and state agencies such as the Pennsylvania Public Utility Commission ("PUC") are empowered to regulate the facilities and approve the contracts covered by PURPA. See 16 U.S.C. § 824a-3(f); 18 C.F.R. pt. 292.1

_____1_____

1. The PUC is an independent state administrative commission authorized to regulate public utility companies doing business in Pennsylvania. See 66 Pa. Cons. Stat. Ann. §§ 301, 501. The Pennsylvania Public Utility Code provides the PUC with broad authority to "supervise and regulate" public utilities doing business in Pennsylvania. Id. § 501(b). PUC regulations, like their FERC counterpart, require utilities to purchase energy from "qualifying facilities." 52 Pa. Code § 57.34.

3

II.2

SER is an independent power producer that owns and operates an anthracite coal refuse-fired cogeneration plant in Shenandoah, Pennsylvania. The plant is a qualifying facility under PURPA, the Federal Power Act, and PUC regulations. See 16 U.S.C. § 796(18); 18 C.F.R. pt. 292; 52 Pa. Code § 57.31.3

PP&L is an electric utility chiefly reliant on coal-burning and nuclear power sources. PP&L services Allentown, Pennsylvania, and surrounding areas. PP&L is regulated by the PUC. PP&L is a member of the Pennsylvania-New Jersey-Maryland Interconnection ("PJM"), a power pool maintained by an unincorporated association of approximately eight member electric utilities located in Pennsylvania, New Jersey, Maryland, Delaware and Washington, D.C. PJM member companies sell excess electric generation capacity to PJM, which is then sold to other PJM member companies or to other power pools.

Pursuant to the regulations promulgated by FERC under the authority of PURPA, PP&L is required to purchase electric energy from SER.4 On October 17, 1986, SER and PP&L entered into a twenty-year Power Purchasing Agreement. Under the terms of the Agreement, "SER is required to sell exclusively to PP&L, and PP&L is required to purchase SER's entire net power output up to 79.5

_____

2. When reviewing a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted, we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. Fuentes v. South Hills Cardiology, 946 F.2d 196, 201 (3d Cir. 1991).

3. SER asserts that it is both an independent power producer and a qualifying facility. We note, however, that an "independent power producer" is by definition "[a]n electric power supplier which is not a qualifying facility . . . ." 52 Pa. Code § 57.31. This potential conflict is not relevant for the purposes of this appeal, however, and throughout this opinion we will refer to SER as both an independent power producer and a qualifying facility without deciding whether either designation is inappropriate.

4. PP&L is also required to (and does) purchase electric energy from independent power producers other than SER.

4

megawatts at a price per kilowatt hour which is either fixed within the agreement or calculated as a percentage of PP&L's Energy-Only Avoided Cost." Amended Complaint, ¶ 22. PP&L is permitted to purchase less than SER's total electric energy output "only when curtailed purchases are necessary for PP&L `to make repairs, changes, tests or inspections, or for reasons of an actual or potential System Emergency, Forced Outage, Force Majeure or PP&L System operating condition which necessitates such disconnections or curtailments . . . .' " Amended Complaint, ¶ 31 (quoting Agreement, Art. 9, ¶ E). PP&L may not curtail purchases of SER's electric output " `for reasons of economic dispatch.' " Amended Complaint, ¶ 42 (quoting Agreement, Art. 9, ¶ E).

The Agreement defines "system emergency" as "any condition on the PP&L System or PJM System which, in PP&L's opinion, may disrupt service to customers or endanger life or property." Amended Complaint, ¶ 32 (quoting Agreement, Art. 1, ¶ CC). According to SER, PP&L has improperly construed the term "system emergency" to include "minimum generation emergencies" and "minimum generation events" (collectively "MINGENS") identified by PJM. MINGENS occur when the aggregate power demand within the regions serviced by PJM is expected to fall below its normal or emergency minimum generation floor level and PJM cannot sell the pool's excess power to the other pools or reduce PJM member company purchases.

SER alleges that when MINGENS are issued by PJM, PP&L has a policy of reducing purchases of energy from independent power producers with high energy prices first and cutting purchases from PP&L-owned energy producers less severely. SER alleges that the majority of PP&L's declarations of system emergencies are disingenuous and are actually declared for reasons of "economic dispatch." In other words, when total electric power available for distribution by PJM exceeds aggregate customer demand, PP&L disproportionately curtails the purchase of electric energy generated by SER and other independent power producers.

SER complains that when PP&L curtails purchases of energy from SER (as it has on several occasions), SER is unable to satisfy its own parasitic load requirements and

5

must purchase oil and electricity. SEC also alleges that PP&L's generation curtailments have caused it to lose revenues and to incur other incidental costs.

III.

In its Amended Complaint, SER alleges two separate federal antitrust violations by PP&L under Section 2 of the Sherman Act, 15 U.S.C. § 2. In Count I, SER alleges a claim of monopolization. In Count II, SER alleges a claim of attempt to monopolize. SER also alleges related state-law claims for intentional misrepresentation, negligent misrepresentation, breach of contract, and breach of duty of good faith and fair dealing.

On November 2, 1995, PP&L moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint in its entirety. In the alternative, PP&L sought to have the district court stay the federal proceeding and refer the case on primary jurisdiction grounds to the PUC for an administrative proceeding to determine the regulatory propriety of PP&L's generation curtailment policies. On January 23, 1996, the district court invoked the doctrine of primary jurisdiction, entered a stay order suspending all further proceedings pending the outcome of the anticipated PUC proceeding, and denied without prejudice PP&L's motion to dismiss the Amended Complaint.

On February 2, 1996, SER filed a motion for reconsideration of the stay order. On April 15, 1996, the district court heard oral argument on both SER's motion for reconsideration and the merits of PP&L's motion to dismiss the Amended Complaint. The court directed the parties to file letter briefs on these motions. In its April 19, 1996, letter brief, SER included two footnotes in which it requested an opportunity to amend its Amended Complaint in lieu of dismissal. SER never filed a formal motion to amend its Amended Complaint.

On May 21, 1996, the district court granted PP&L's motion to dismiss SER's Amended Complaint in its entirety. After dismissing SER's federal antitrust claims, the district court declined to exercise supplemental jurisdiction over SER's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

6

The court dismissed as moot SER's motion to lift the stay order. SER filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.5

IV.

Section 2 of the Sherman Act provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2.

To state a claim for monopolization, a plaintiff must allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 197 (3d Cir. 1992) (quoting United States v. Grinnell Corp., 384 U.S. 563, 570-71, 86 S.Ct. 1698, 1704 (1966)). To state a claim for attempted monopolization, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456, 113 S.Ct. 884, 890-91 (1993); see also Barr Lab., Inc. v. Abbott Lab., 978 F.2d 98, 112 (3d Cir. 1992) (plaintiff must allege that defendant "(1) had specific intent to monopolize the relevant market, (2) engaged in anti-competitive or exclusionary conduct, and (3) possessed sufficient market power to come dangerously close to success.").

SER's right to maintain a private cause of action for damages arising under Section 2 of the Sherman Actflows

_____

5. We exercise plenary review over the district court's grant of PP&L's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 277 (3d Cir. 1996). We apply the same standard as the district court; that is, we must "refrain from granting a dismissal unless it is certain that no relief can be granted under any set of facts which could be proved." Fuentes, 946 F.2d at 201.

7

from Section 4 of the Clayton Act, which provides for suits by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). In Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690 (1977), the Supreme Court limited the class of Section 4 plaintiffs to those who plead and prove "antitrust injury." Observing that the antitrust laws were designed for the "protection of competition, not competitors," the Court stated:

> [P]laintiffs . . . must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

Id. at 489, 97 S.Ct. at 697 (emphasis in original); see also Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 875 (3d Cir. 1995); International Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327-28 (3d Cir. 1992).

SER alleges that PP&L's curtailment of energy purchases from SER and other independent power producers harms competition and consumer welfare

> by keeping PP&L's rate base artificially high, by depriving consumers within PP&L's service area of energy sources other than those owned and/or exploited by PP&L (which, in turn, reduces the reliability of electric service provided), and by reducing the availability to consumers of power produced using alternative, environmentally pro-active energy sources.

Amended Complaint, ¶ 66.6 We address each of these alleged injuries in turn.

_____

6. SER also alleged a list of its damages, including the loss of electricity sales revenues, increased costs to purchase fuel oil and electricity, and accelerated depreciation of the plant through increased stress upon vital components attributable to excessive cycling. Amended Complaint, ¶ 70. These allegations do not constitute antitrust injury. As the district court

8

We begin with SER's allegation that PP&L's generation curtailment policy enables PP&L to keep its rate base artificially high. SER contends that PP&L's rate base is a function of the value of "used and useful" capital equipment owned by PP&L for generating, transmitting and distributing electricity to the public. PP&L may not, however, include the cost of electrical power purchased from independent power producers like SER in PP&L's rate base.7 According to SER, during periods of lower demand, PP&L has an economic incentive to maintain power generation at its own facilities (to preserve a high rate base) and to reduce energy purchases from independent power producers, which cost PP&L money but contribute nothing to PP&L's rate base.

Under the circumstances of this case, whether and to what extent PP&L maintains an artificially high rate base is not within the purview of the antitrust laws. As SER concedes, Pennsylvania regulators -- not the market -- determine PP&L's rate base. PP&L has no unilateral ability to change its rates; any increase or decrease in rates must be filed with the PUC and conform to PUC regulations and orders. See 66 Pa. Cons. Stat. Ann. #8E8E # 1301, 1308; Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co., 22 F.3d 1260, 1270 (3d Cir. 1994) ("Pennsylvania statutes expressly provide for PUC regulation of rates . . . .").

PP&L contends that "[t]he antitrust laws are intended to protect the competitive process by which prices and other terms of trade are established by the marketplace, not how regulators administer the accounting formulas that [are

_____

properly concluded, "[s]uch injuries to an individual competitor company, without allegations of injury to competition or consumer welfare, are insufficient as a matter of law to establish a violation of federal antitrust law." Dist. Ct. Op., at 7, 1996 WL 284994, at *3 (E.D. Pa. May 21, 1996); see Brunswick, 429 U.S. at 488, 97 S.Ct. at 697.

7. "Utilities earn a return only on their property which is used and useful in producing and delivering power. The utilities earn no return on costs, such as those incurred to purchase fuel or power from other sources such as [qualifying facilities]." Lehigh Valley Power Comm. v. Pennsylvania Pub. Util. Comm'n, 563 A.2d 548, 552 n.10 (Pa. Commw. Ct. 1989).

9

used in] ratemaking." Appellee Brief, at 20. We agree. SER's complaints about PP&L's allegedly high rate base should be brought before the PUC, not to federal court on an antitrust complaint.8

SER also alleges that PP&L's curtailment of energy purchases from SER and other independent power producers "depriv[es] consumers within PP&L's service area of energy sources other than those owned and/or exploited by PP&L." Amended Complaint, ¶ 66. Depriving consumers of "energy sources" is not, however, cognizable antitrust injury. An "energy source" is not the same as a "competitor," and the fact that PP&L obtains the majority of its energy from few energy sources does not indicate an absence of competition. For example, if PP&L were to "own and/or exploit" a diverse supply of energy sources, thus satisfying SER's expressed concern, the relevant question of whether PP&L was unlawfully monopolizing the relevant market would remain unanswered. Consumers within PP&L's service area would still receive the same product (electricity) and the same amount of competition (none). At issue is whether PP&L unlawfully excluded independent power producers like SER from the relevant market, not whether consumers receive electricity generated by nuclear, coal, culm, solar, or any other energy source.9

───────────────────────────────────────────────

8. In Pennsylvania, the PUC has been entrusted with "full power and authority . . . to enforce, execute and carry out, by its regulations, orders, or otherwise, . . . the provisions of [the Code] and the full intent thereof." 66 Pa. Cons. Stat. Ann. § 501; see id. § 1301 (rates shall be "just and reasonable").

SER's assertion that PP&L's curtailments allow it to "unfairly and illegally skew the evidence, concerning the extent to which its capital equipment is utilized that it presents the PUC in support of rate requests, thereby misleading the PUC in its rate determinations," Appellant Brief, at 18-19, might also appropriately be grounds for a complaint before the PUC, but it is not a basis for an antitrust complaint. See 66 Pa. Cons. Stat. Ann. § 1311 (PUC may ascertain and fix fair value of public utility's property); id. §§ 505, 1302 (public utilities shall furnish information to PUC).

9. In addition, while the environmental quality of energy sources may be a worthwhile concern, it does not appear to be a problem whose solution is found in the Sherman Act. See, e.g., In re Multidistrict Vehicle Air

10

Even if we construe SER's Amended Complaint to find an assertion that PP&L's generation curtailment policy destroys competition in the provision of energy to consumers, we would still not find any cognizable antitrust claim in this case. To state a claim for monopolization, SER must allege, <u>inter alia</u>, that PP&L willfully acquired or maintained monopoly power in the relevant market. To state a claim for <u>attempted</u> monopolization, SER must allege, <u>inter alia</u>, that PP&L had a dangerous probability of achieving monopoly power in the relevant market. For both claims, we must consider the scope of the relevant market. <u>Spectrum Sports</u>, 506 U.S. at 456-59, 113 S.Ct. at 891-92. According to SER, the primary relevant market in this case is the retail service of 1.2 million customers in PP&L's service area, which covers approximately 10,000 square miles of central eastern Pennsylvania. Amended Complaint, ¶ 16.

Thus, SER must allege that PP&L unlawfully acquired monopoly power or had a dangerous probability of unlawfully achieving monopoly power in its service area. To do this, SER must allege that PP&L in some way acted to

---

<u>Pollution</u>, 538 F.2d 231, 236 (9th Cir. 1976) (where "the harm to be alleviated is environmental, not economic in the antitrust sense," court affirmed dismissal of antitrust suit); <u>Conservation Council of W. Austl., Inc. v. Aluminum Co. of Am.</u>, 518 F. Supp. 270, 281 (W.D. Pa. 1981) (where plaintiff "attempt[s] to raise environmental issues under the guise of antitrust laws," court dismissed plaintiff 's complaint for failure to state claim upon which relief can be granted); <u>see also Gutierrez v. E. & J. Gallo Winery Co., Inc.</u>, 604 F.2d 645, 646 (9th Cir. 1979) (affirming dismissal of antitrust claims brought by farm workers complaining about work reduction; plaintiffs' goals were unrelated to purpose of antitrust laws); <u>Marchwinski v. Oliver Tyrone Corp.</u>, 83 F.R.D. 606 (W.D. Pa. 1979) (dismissing antitrust claims that sought to remedy gender discrimination); <u>cf. National Soc'y of Prof'l Eng'rs v. United States</u>, 435 U.S. 679, 693-95, 98 S.Ct. 1355, 1366-67 (1978) (rejecting defendant's attempt to use safety and health to justify anticompetitive behavior).

We do not decide that environmental quality can never be considered when conducting antitrust analysis. Rather, we conclude that when an antitrust defendant's conduct cannot be linked to antitrust injury, the fact that the conduct may be otherwise undesirable is not a concern of the antitrust laws.

11

exclude SER as a competitor in the delivery of electricity to customers in PP&L's service area. In Vinci v. Waste Management, Inc., 80 F.3d 1372 (9th Cir. 1996), the Court of Appeals for the Ninth Circuit explained:

The antitrust laws are intended to preserve competition for the benefit of consumers in the market in which competition occurs. . . . The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors. . . . A plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer antitrust injury.

Id. at 1376 (internal quotations and citations omitted); see also International Raw Materials, 978 F.2d at 1328. SER attempts to satisfy its pleading obligation by contending that it is PP&L's competitor in the retail market:

PP&L gets reimbursed dollar for dollar from its customers . . . for all power which it purchases from SER . . . . Therefore, SER, to all intents and purposes, is selling its power to the public with PP&L acting as a distribution agent or middleman. . . . SER, therefore, is a competitor with PP&L for the sale of electric energy to PP&L's consumers within PP&L's service area.

Amended Complaint, ¶¶ 24-25. According to SER, PP&L's generation curtailment policy harms SER, and thus harms competition. We do not agree. SER is not PP&L's competitor -- it is PP&L's supplier. SER concedes that in October 1986, it entered into an agreement with PP&L in which "SER is required to sell [its electric energy] exclusively to PP&L" for twenty years. Amended Complaint, ¶¶ 20, 22. Pursuant to the Agreement which SER now seeks to enforce, SER is currently prohibited from competing with PP&L in the relevant market. A supplier of a product does not become a competitor of the purchaser merely because the purchaser in turn sells the product to the ultimate user. SER cannot allege that PP&L's purported breach of contract establishes injury to competition when that very contract prevents SER from competing with PP&L in the first place.

12

In addition to the fact that the Agreement on its face defeats SER's claim that it is PP&L's competitor, state and federal laws prohibit SER from competing in the relevant market. SER concedes that independent power producers such as SER "normally cannot, by virtue of state and federal regulation and physical limitations, sell power directly to consumers." Amended Complaint, ¶ 12. SER does not allege that it is currently permitted to sell electricity directly to consumers, and SER concedes that "SER did not, at the time the complaint was drafted, have the ability to deliver environmentally friendly energy directly to retail consumers." Oral Arg. Trans. at 5. [10]

SER directs our attention to the Pennsylvania Electricity Generation Customer Choice and Competition Act, 66 Pa. Cons. Stat. Ann. § 2801 et seq., which was signed into law on December 3, 1996. The Choice and Competition Act will fundamentally restructure Pennsylvania's retail electric industry by providing consumers with a choice of electric generation suppliers. The Act will permit competition in PP&L's service area.

The Choice and Competition Act comes too late for SER's Amended Complaint. Competitive retail access will be phased in over time, and direct access to competition will not exist across Pennsylvania until January 1, 2001. Competitive retail access pilot programs did not begin until April 1, 1997, id. § 2804(12), long after SER filed its Amended Complaint, and the pilot programs are only available to five percent of the "peak load." Id. § 2806(B). [11]

SER asks us to find that PP&L's generation curtailment policy injures SER today, and that those injuries will inhibit SER's ability to compete with PP&L in the future market.

_____

10. See also Greensboro Lumber Co. v. Georgia Power Co., 643 F. Supp. 1345, 1373 (N.D. Ga. 1986) ("In establishing PURPA, . . . Congress did not intend to place qualifying facilities in competition with public utilities. . . . Qualifying facilities are not authorized under PURPA to sell at retail . . . . [T]hey are not competitors of public utilities."), aff'd, 844 F.2d 1538 (11th Cir. 1988).

11. At oral argument, counsel for SER conceded that "the first opportunity for customers to choose their electric generation suppliers is April 1st of this year . . . ." Oral Arg. Trans. at 13.

13

We cannot permit SER to pursue such a speculative path to recovery under the Sherman Act.

We will not attempt to predict the future of competitive retail access in Pennsylvania. We do not know whether SER or PP&L will even exist in 2001, and we certainly do not know whether PP&L will enjoy an unlawful monopoly in its service area at that time.12 What we do know is that SER is presently unable to compete with PP&L, both by agreement and by law. While SER attempts to characterize itself as PP&L's competitor on the eve of deregulation, we conclude that SER cannot, as a matter of law, establish that PP&L's generation curtailment policy creates an injury of the type the antitrust laws were intended to prevent.13

As noted, we read SER's Amended Complaint to address primarily SER's intention to compete with PP&L in the retail market -- the 1.2 million customers within PP&L's service area. SER also contends, however, that it is PP&L's competitor for the wholesale distribution of power to PJM member companies and other power pools. Amended Complaint, ¶ 37.14 According to the Amended Complaint, however, the Power Purchase Agreement requires SER to sell its energy exclusively to PP&L. SER is therefore contractually prohibited from selling energy to wholesale resellers other than PP&L. We cannot conceive how SER

---

12. At oral argument, counsel for SER conceded that "it's true that we don't know exactly what the market will look like[following deregulation] . . . ." Oral Arg. Trans. at 16.

13. We do not decide whether PP&L's generation curtailment policy would violate the Sherman Act in a competitive market where no agreement precluded competitive activity. That scenario, while it may arise at some point in the future, is not presently before us.

14. At oral argument, counsel for SER suggested that the relevant "wholesale market" includes sales to industrial consumers who attach transmission lines to SER's line. Oral Arg. Trans. at 25. We disagree. The "sale of electric energy at wholesale" is defined by statute as the "sale of electric energy to any person for resale." 16 U.S.C. § 824(d) (emphasis supplied). Industrial consumers who purchase electric energy for their own use (i.e., not for resale), are not wholesale customers; they are retail consumers. The relevant wholesale market in this case, as suggested in SER's Amended Complaint, is the sale of energy to PJM member companies and other power pools.

14

intends to compete with PP&L in the wholesale market without violating the very agreement which it seeks to enforce here.[15]

In addition, SER's failure to obtain FERC approval precludes it from compelling other PJM member companies to accept energy directly from SER in the wholesale market as a matter of law. Before PJM member companies may be compelled to accept energy directly from SER: (1) SER must file an application with FERC; (2) affected State commissions and utilities must receive notice; (3) there must be an opportunity for a hearing; and (4) FERC must find that such action is necessary or appropriate in the public interest. 16 U.S.C. § 824a(b); 18 C.F.R. pt. 32. In addition, FERC may not compel the enlargement of generating facilities for such purposes, and it may not compel a public utility to sell or exchange energy when to do so would impair the utility's ability to render adequate service to its customers. 16 U.S.C. § 824a(b). SER does not allege that it has applied to FERC or that the other requirements of section 824a(b) have been satisfied.

SER does not allege that it has the ability or desire to sell energy directly to PJM member companies other than PP&L. SER does not even allege that it has taken any steps to secure voluntary interconnection with PJM member companies other than PP&L. See id. § 824a(a); 18 C.F.R.

_____

15. While the Amended Complaint clearly states that SER must sell its energy exclusively to PP&L, the Power Purchase Agreement itself is ambiguous and can be read to permit SER to sell energy to third parties once it provides 79.5 megawatts to PP&L. Agreement, Art. 3. We rely on the plain language of the Amended Complaint in concluding that the Agreement precludes SER from competing with PP&L in the wholesale market. As we note in the text, however, even if the Agreement does not prevent SER from selling excess energy in the wholesale market: (1) SER may not compel other PJM member companies to accept energy directly from SER due to its failure to comply with 16 U.S.C.§ 824a(b); and (2) as a matter of undisputed fact, SER must supply its energy exclusively to PP&L, cannot physically provide energy directly to other utilities, and has not attempted to secure voluntary interconnections with PJM member companies other than PP&L. We will not permit SER to amend its Amended Complaint to clarify its rights under the Agreement as such amendment would be futile.

15

§ 32.1(g). Indeed, as Judge Stapleton observes, "SER has not alleged that it has sold, attempted to sell, or even intends to sell any excess capacity" to others in the wholesale market. Rather, SER contends that it competes with PP&L in the wholesale market by selling excess energy to PP&L and having PP&L resell the energy to other utilities. See Amended Complaint, ¶¶ 23, 37. As our rejection of SER's identical retail market argument makes clear, however, an arrangement whereby SER sells energy to PP&L and PP&L resells the energy to third parties (retail or wholesale) makes SER PP&L's supplier, not PP&L's competitor.

In effect, SER's argument turns on itself. In an effort to demonstrate the existence of potential competition in the wholesale market, SER argues that it is not required to sell its excess energy to PP&L. SER also argues, however, that it competes with PP&L in the wholesale market by selling its excess energy to PP&L and hoping that PP&L resells that energy to other utilities. SER cannot have it both ways. If SER is not required to sell its excess energy to PP&L, SER cannot complain that PP&L's failure to purchase that energy constitutes an antitrust violation.

When reviewing a Rule 12(b)(6) dismissal, we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. Fuentes, 946 F.2d at 201. We are not, however, required to accept as true unsupported conclusions and unwarranted inferences. Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1254-55 (M.D. Pa. 1994); Resolution Trust Corp. v. Farmer, 823 F. Supp. 302, 305 (E.D. Pa. 1993); Sinchak v. Parente, 262 F. Supp. 79, 81 (W.D. Pa. 1966). While SER alleges in its Amended Complaint that it is PP&L's competitor in the retail and wholesale markets, those assertions are belied by both the remaining factual allegations and the law.

Finally, SER contends that PP&L's curtailment practice reduces the "availability to consumers of power produced using alternative, environmentally pro-active energy sources." Amended Complaint, ¶ 66. As discussed above, however, this allegation does not implicate the antitrust laws. If PP&L did hold an unlawful monopoly in its service

16

area but it decided to generate power with "environmentally pro-active energy sources," PP&L would satisfy SER's alleged concerns, but it would still hold an unlawful monopoly. Likewise, since we conclude that PP&L does not hold an unlawful monopoly in its service area, the fact that PP&L allegedly does not rely on "environmentally pro-active energy sources" does not change our conclusion about PP&L's generation curtailment policy.

We recognize that the existence of antitrust injury is not typically resolved through motions to dismiss. Brader, 64 F.3d at 876. This is not, however, a typical case. The fundamental dispute between SER and PP&L concerns the interpretation of the Power Purchasing Agreement. This dispute should be resolved pursuant to common-law contract principles and with reference to PURPA. Cf. Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp., 908 F. Supp. 1194, 1208 (W.D.N.Y. 1995); id. at 1203-04 ("Although actions that violate PURPA could conceivably violate the antitrust laws as well, they are not the same thing, and one does not necessarily flow from the other.").16 Since both law and contract prevent SER from competing with PP&L, PP&L's generation curtailment policy cannot be said to harm competition. SER has failed to allege any injuries of the type the antitrust laws were designed to prevent, and the district court properly dismissed Counts I and II of the Amended Complaint. Given our disposition of SER's federal antitrust claims, we will also affirm the decision of the district court to decline to exercise supplemental jurisdiction over SER's state law claims.

_____

16. Kamine/Besicorp involved allegations that a public utility used its monopsony power as the exclusive buyer of wholesale electric power within the utility's service area to drive a qualifying facility out of business by demanding a predatory price. 908 F. Supp. at 1203. The district court determined that the utility's monopsony power did not pose a threat to increased consumer prices and that the qualifying facility's demand for payments in excess of the utility's avoided cost was not supported by the antitrust laws. Id. at 1203-05.

V.

SER also contends that the district court abused its discretion by not affording SER an opportunity to amend further its Amended Complaint. As noted above, on April 15, 1996, the district court heard oral argument on both SER's motion for reconsideration of the court's stay order and the merits of PP&L's motion to dismiss the complaint. The court directed the parties to file letter briefs on these motions.

In its April 19, 1996, letter brief, SER included two footnotes that suggested its desire to amend the Amended Complaint. SER never filed a formal motion to amend further its Amended Complaint. See Fed. R. Civ. P. 15(a). Nonetheless, SER contends that its failure to file a motion for leave to amend should be excused and that it should be permitted to amend its Amended Complaint. District Council 47, Am. Fed'n of State, County & Mun. Employees, AFL-CIO v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986) (amendment is not precluded merely because plaintiff elects to appeal Rule 12(b)(6) dismissal based on lack of factual specificity rather than seek leave to amend complaint).17

Unfortunately, on appeal SER does not indicate what it would do with a second opportunity to amend its Complaint. We look, therefore, to SER's letter brief. Footnote 1 of the brief provides:

1. SER believes that all of these inferences[regarding present competition with PP&L in the sale of power to resellers such as municipal utilities, and future competition in a deregulated retail market] are implicit in the language of its Complaint, as well as the suggestion that PP&L's predatory conduct will have a chilling effect upon the future entry into the relevant

_____

17. SER's assertion that the stay prevented SER from filing a motion for leave to amend the Amended Complaint is belied by the fact that (1) almost three months elapsed between the time PP&Lfiled its motion to dismiss and the time the court entered its stay order; (2) SER filed several letter briefs with the court during the stay; and (3) SER did not seek leave from the stay for permission to file a motion for leave to amend. Thus, we will focus on whether we should excuse SER's failure to seek leave to amend its Amended Complaint.

18

market of potential new electricity generation competitors to PP&L. Should the court decide that these assertions or others discussed in this letter must be expressly pled, SER asks the court to consider this letter as a request to amend the Complaint appropriately.

SER Letter Brief, at 2 n.1 (April 19, 1996). Footnote 2 states:

2. While this fact issue could be resolved through discovery, SER now seeks leave to amend the Complaint to recite the Plant's actual capacity to generate at least 5.5 megawatts, for potential sale to third parties, in excess of the amount which it presently provides by contract to PP&L.

Id. at 6 n.2. Thus, SER's letter brief suggests a desire to amend its Amended Complaint to detail allegations regarding (1) SER's present ability to compete with PP&L in the wholesale market, (2) SER's future ability to compete with PP&L in the retail market, and (3) PP&L's efforts to thwart SER's present and future competitive undertakings.

If further amendment of the Amended Complaint will not result in a determination that the newly amended complaint is sufficient to withstand a renewed motion under Rule 12(b)(6), we need not permit the amendment. See Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1572 n.7 (3d Cir. 1995), cert. denied, #6D 6D6D# U.S. ___, 116 S.Ct. 1434 (1996); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). After review of SER's new assertions, we conclude that SER's proposed amendments will not enable it to withstand a renewed motion to dismiss.

SER's physical ability to generate sufficient power to serve directly both wholesale and retail customers is not relevant. First, SER's Amended Complaint clearly states that SER is contractually bound to sell its power exclusively to PP&L. Second, SER concedes that at the time it filed its Amended Complaint it was legally prohibited from competing with PP&L and that retail competition did not begin until pilot programs were initiated in April of 1997. Thus, SER could not compete with PP&L, even if it had the capacity to do so. We conclude that SER's proposed

19

amendments will not enable it to withstand a renewed motion to dismiss, and we will not grant SER leave to amend further its Amended Complaint.18

VI.

We do not decide whether PP&L's generation curtailment policy violates the Power Purchasing Agreement, PURPA, or Pennsylvania regulations. We also do not decide whether PP&L's practices will violate the antitrust laws in the future. We are limited to deciding whether SER can plead that, at the time the Amended Complaint was filed, PP&L was unlawfully monopolizing or attempting to monopolize the markets for the provision of electric energy to retail consumers or wholesale resellers. SER cannot meet this burden. The Power Purchasing Agreement and the law prevent SER from competing with PP&L in the relevant markets. SER cannot, therefore, plead antitrust injury. We will affirm the judgment of the district court. 19

_____

18. We do not decide whether the district court should have construed the two footnotes as a motion for leave to amend, and we, therefore, do not decide whether the district court abused its discretion in failing to grant such a motion. Miklavic v. USAir Inc., 21 F.3d 551, 553 (3d Cir. 1994) (decision to dismiss with prejudice without granting leave to amend is subject to appellate review under abuse of discretion standard). It is sufficient that we find that SER is not entitled to amend its Amended Complaint.

19. SER also argued that the district court erred in granting PP&L's motion for a stay of proceedings and referring the case on primary jurisdiction grounds to the PUC for an administrative proceeding to determine the regulatory propriety of PP&L's generation curtailment policies. See United States v. Western Pac. R.R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165 (1956) (discussing application of primary jurisdiction doctrine); Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d Cir. 1996) (same). Given our disposition of the other issues raised in this appeal, we need not decide SER's challenge to the district court's stay order.

20

STAPLETON, Circuit Judge, concurring:

I believe that the Power Purchase Agreement between SER and PP&L is susceptible of an interpretation that SER's duty to sell exclusively to PP&L is limited to the first 79.5 megawatts of its output. Therefore, I cannot agree with the majority that the "contract prevents SER from competing with PP&L." Maj. Op. at 12.

Nonetheless, I concur in the judgment to affirm the district court's dismissal of SER's complaint with respect to the retail market on the alternative ground on which the majority relies: by law there was no competition in the retail market during the period complained of in the complaint. Competition in the retail market is currently being phased in, see Pennsylvania Electricity Generation Customer Choice and Competition Act, 66 Pa. Cons. Stat. Ann. § 2801 et seq., but there was no competition prior to the passage and implementation of the recent legislation. Without a competitive market, SER could not have been PP&L's competitor, and there cannot have been antitrust injury.

I also agree that SER's complaint with respect to the wholesale market should be dismissed, but I reach this conclusion for a different reason than the majority. SER has not alleged that it has sold, attempted to sell, or even intends to sell any excess capacity (i.e. above what it provides under the Agreement to PP&L) on the wholesale market to others for resale. The proposed amendment to the complaint would only clarify SER's interpretation of the Power Purchase Agreement and allege that SER is capable of producing more than 79.5 megawatts. Thus, even if the amendment were permitted, the complaint would still be devoid of an allegation that SER has competed, or has even formulated a plan to compete, with PP&L in some designated wholesale market. SER's conclusory allegation that it is a competitor with PP&L in the wholesale market is entirely without factual context. Even on a motion to dismiss, a district court need not credit unsubstantiated conclusions and bald assertions. See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 311 (1989). In the

21

absence of some description of past or anticipated
competition between SER and PP&L in a wholesale market,
there is no basis for inferring the existence of, or potential
for, antitrust injury.

For these reasons, I would affirm the judgment of the
district court.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

22