766 So.2d 264 (2000)
OKEELANTA POWER LIMITED PARTNERSHIP, Osceola Power Limited Partnership, and Gator Generating Company, Limited Partnership, Appellants,
v.
FLORIDA POWER & LIGHT COMPANY, FPL Group, Inc., and FPL Group Capital, Inc., Appellees.
No. 4D98-3723.
District Court of Appeal of Florida, Fourth District.
February 16, 2000.
*265 Daniel S. Pearson and Warwick R. Furr, II, of Holland & Knight LLP, Miami, for appellants.
Gary K. Harris and Cynthia M. Moore of Boies & Schiller LLP, Orlando, David Boies of Boies & Schiller LLP, Armonk, New York, and Louis M. Silber of Lewis, Vegosen, Rosenbach & Silber, P.A., West Palm Beach, for appellees.
POLEN, J.
In 1991, Florida Power and Light Co. (FPL Co.) entered into contracts with Okeelanta Power and Osceola Power (collectively "Okeelanta") to purchase electrical power. Following an alleged breach of the contracts by Okeelanta, FPL Co. filed suit seeking a declaration of its rights and obligations under the contracts. Okeelanta counterclaimed against FPL Co. In Count IV of their counterclaim, which alleged an antitrust violation, they named Florida Power and Light Group, Inc., FPL Co.'s parent corporation, as well as Florida Power and Light Group Capital, a wholly *266 owned subsidiary of FPL Group, Inc. The trial court granted FPL Co.'s motion to dismiss Counts III, IV and V of the Amended Counterclaim, which had the effect of dismissing FPL Group and FPL Group Capital (collectively "FPL") from the action. Okeelanta and Gator Generating[1] then appealed the final order dismissing FPL from the action. We affirm the order of dismissal.[2]

BACKGROUND
In 1989, after determining electricity produced by co-generation and small power production was of benefit to the public, the Florida Legislature enacted chapter 89-292, Laws of Florida. This chapter required electric utilities in the state to purchase all electricity offered for sale by co-generators or small power producers. § 366.051, Fla. Stat. (1989). In 1991, FPL Co. entered into Standard Offer Contracts (SOC) with Okeelanta to purchase electrical power that Okeelanta would later generate in facilities they would construct. Okeelanta entered into contracts for the construction of the co-generating facilities ("EPC Contracts"), and arranged for the sale of $288.5 million of Palm Beach County Industrial Revenue Bonds to complete their construction.
Okeelanta alleged the facilities were constructed in November and December of 1995 and sold electricity to FPL Co. in 1995 and 1996. They further alleged the contracts provided that commercial operation would be accomplished by January 1, 1997, but contained a clause allowing FPL Co. to retain a percentage of the Completion Security Deposit for each month during which commercial operation did not occur after that date, for up to five calendar months. Finally, they alleged both facilities put FPL Co. on notice of the events which could temporarily reduce the generating capacity of the facilities below their committed capacities.
On January 8, 1997, FPL Co. filed its initial complaint in this action, asserting its contracts with Okeelanta were void.

OKEELANTA'S AMENDED COUNTER-CLAIM
Count IV of Okeelanta's amended counterclaim asserted an anti-trust claim against FPL pursuant to section 542.19 of Florida's Antitrust Act of 1980.[3] In this counterclaim, Okeelanta alleged FPL had monopoly power over the geographic market it called Southeast Florida. Okeelanta defined two distinct markets: a retail market and a wholesale market. Okeelanta alleged they were actual competitors of FPL in the wholesale bulk market and potential competitors of FPL in the retail market as deregulation occurred. They alleged FPL devised a scheme to eliminate competitor co-generating facilities by boycotting meetings regarding co-generating plant modifications and by reviewing the contracts "in an effort to discover technical reasons to terminate them." They also alleged FPL refused to make capacity payments under the contracts, and refused to refund Security Performance and the Completion Security Deposits under the contracts. In all, they alleged FPL enjoyed a monopoly over the retail market, and monopolized or attempted to monopolize the long-term bulk power wholesale market. They claimed to have suffered injury in the form of loss of their performance *267 and completion deposits, as well as loss of capacity payments.

FPL'S MOTION TO DISMISS
In pertinent part, FPL moved to dismiss Count IV of Okeelanta's Counterclaim on the basis that Okeelanta's claimed injury arose from FPL's alleged breach of the contracts, and not from any alleged anti-competitive conduct on FPL's part. Specifically, it argued that Okeelanta lacked standing to assert an injury in the regulated retail market because such market did not yet exist. It also argued that Okeelanta failed to assert a cause of action with respect to the wholesale market because it was not a competitor in same.

TRIAL COURT'S RULING
The trial court dismissed Count IV of Okeelanta's counterclaim. It first found that Okeelanta lacked antitrust standing as to the alleged possible future unregulated retail market. The court explained that because such market was not in existence, any claim or damages based on it were too remote and speculative. Second, it found that the counterclaim lacked any factual allegations which would support a claim of any antitrust injury as to the wholesale bulk market. The court noted that the injury alleged was not linked to any lessening of competition in the market, but rather, was alleged to be the result of FPL's breaches of the contracts.

STANDARD OF REVIEW
When reviewing an order that determines the sufficiency of a complaint, the appellate court must accept the facts alleged in the complaint as true. See Sarkis v. Pafford Oil Co., 697 So.2d 524, 526 (Fla. 1st DCA 1997). "Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the de novo standard of review." Id.

MONOPOLIZATION CLAIM
Okeelanta argues it adequately alleged that FPL Group acted individually and through its subsidiaries, FPL Group Capital and FPL Co., to monopolize the wholesale generation, transmission and sale of electric energy in the Southeast Florida Market. It, thus, argues the trial court prematurely dismissed Count IV of its counterclaim.[4]
As explained in America Online, Inc. v. GreatDeals.Net, 49 F.Supp.2d 851 (E.D.Va.1999),
To prevail on a monopolization claim, a party must show: (1) possession of monopoly power in a relevant market; (2) willful acquisition or maintenance of that power in an exclusionary manner; and (3) causal antitrust injury.
Id. at 857 (citations omitted). In this regard, "antitrust injury" is defined as the anticompetitive effect of the violation or of anticompetitive acts made possible by the violation. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). In other words, an antitrust injury is one that results from any decrease in competition. Hodges v. WSM, Inc., 26 F.3d 36, 39 (6th Cir.1994). Overall, mere allegations that a party has violated the antitrust laws are insufficient to survive a motion to dismiss under rule 12(b)(6); the party must plead sufficient facts to establish each element and cannot use terms which are conclusory. GreatDeals.Net, 49 F.Supp.2d at 857.

MARKET COMPETITOR AND ANTI-TRUST INJURY
We find the facts in the instant case to be analogous to those in Schuylkill Energy Resources, Inc. v. Pennsylvania Power and Light Co., 113 F.3d 405 (3d Cir.1997).[5] *268 In that case, Schuykill Energy Resources (SER), a co-generator, appealed from an order dismissing its antitrust action against Pennsylvania Power and Light (PPL) for allegedly monopolizing the provision of electric energy to retail consumers and to wholesale resellers affiliated with PPL. Id. at 410. Both federal regulations and the terms of the parties' contract mandated that PPL purchase energy from SER. According to the contract, PPL was not required to purchase SER's total output of electric energy, but rather, could decrease the amount of its purchase when the reduction was necessary for PPL to make repairs, changes, tests, or inspections, or for reasons of an actual or potential emergency. Id. at 411. SER alleged PPL's declarations of system emergencies were disingenuous and that PPL's policy of reducing purchases of energy caused it to lose revenues and incur incidental costs. Id. at 412.
The district court dismissed SER's lawsuit, and the Third Circuit affirmed. It first explained that antitrust laws are designed to protect competition for consumer welfare, and that unless a competitor or consumer can prove antitrust injury, there can be no viable antitrust claim. Id. at 413 n. 6. It held that because both law and the parties' agreement prohibited SER from competing with PPL, SER could not prove an antitrust injury required for any antitrust claim. Id. at 416. As such, the court rejected SER's argument that a supplier of a product becomes a competitor of the purchaser merely because the purchaser in turn sells the product to the ultimate user. Id. at 417. It also rejected as speculative SER's contention that SER's ability to compete with PPL would be hampered in the future retail market after deregulation. Id. at 416.

RETAIL MARKET
We hold that Schuylkill Energy supports the trial court's dismissal of Count IV of Okeelanta's counterclaim as to an alleged antitrust injury in the retail market. As the trial court found below, Okeelanta was not a competitor of FPL in the regulated retail market. Okeelanta's claim of a potential competitor relationship in a future deregulated market is, thus, too speculative to support the present imposition of antitrust liability. See id.

WHOLESALE MARKET[6]
We also conclude that, based on Schuylkill Energy, Count IV of Okeelanta's Amended Counterclaim failed to adequately allege an antitrust injury. Specifically, Okeelanta alleged they were injured in their business or property by "the loss of their performance and completion deposits and the loss of the capacity payments which FPL Group knew as early as 1993 were the only and essential source to cover the debt service and operations of the plants...."[7] Thus, the only injury alleged was a competitor's loss of revenues caused by an alleged breach of contract. Such injury is insufficient as a matter of law to establish a violation of federal antitrust law. See id. at 413 n. 6.
In sum, Okeelanta cannot show a loss that "comes from acts that reduce output or raise prices to consumers." Chicago Professional Sports Ltd. Partnership v. National Basketball Ass'n, 961 F.2d 667, 669 (7th Cir.1992). Rather, Okeelanta's only alleged loss in the instant case was a personal loss of income. Under these facts, we cannot envision potential *269 allegations that would address a loss occasioned by acts that reduce output or raise prices to consumers. As such, we hold that the court properly dismissed Count IV without granting Okeelanta leave to amend.[8]
AFFIRMED.
STEVENSON and SHAHOOD, JJ., concur.
NOTE: SHAHOOD, J., did not participate in oral argument but has reviewed the presentation made at that proceeding.
NOTES
[1] Osceola assigned its rights and obligations to Gator Generating in 1994.
[2] As FPL Co. remains a party to the action pending below, we grant FPL Co.'s Motion to Dismiss Appeal as to FPL Co. only. Dismissal of FPL Co. from this appeal renders Okeelanta's Points II, III, and IV on appeal premature because those points address the trial court's dismissal of counterclaims that named only FPL Co. as counterdefendant.
[3] Section 542.19, Florida Statutes (1997), provides:

542.19 Monopolization; attempts, combinations, or conspiracies to monopolize.- It is unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce in this state.
[4] Okeelanta has implicitly abandoned its argument regarding FPL's monopolization of a retail market.
[5] The Florida Legislature expressly directed that in construing Chapter 542, "due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes." § 542.32, Fla. Stat. (1997).
[6] The parties disagree regarding a concession made by FPL as to Okeelanta's standing as a competitor in the wholesale bulk market. Our review of the record on FPL's Motion to Dismiss, however, shows that FPL conceded that Okeelanta adequately alleged it was a competitor of FPL in the wholesale market in its Amended Counterclaim.
[7] Okeelanta also alleged it was injured by "threatened loss or damage," implying a potential future loss in the retail market. Because Okeelanta was not a competitor in the retail market, any future loss is irrelevant to the issue of whether it adequately alleged antitrust injury.
[8] As an alternative basis to affirm, FPL argues that Okeelanta failed to allege a basis for piercing the corporate veil or some direct action taken by Florida Power and Light Group, Inc. and/or Florida Power and Light Group Capital, separate from the acts of FPL. FPL is correct in that in order to hold a parent corporation liable for the alleged antitrust violations of its subsidiary, one must prove an independent act on the part of the parent to affect the relevant market, or a basis to pierce the corporate veil (i.e., the subsidiary is a mere instrumentality of the parent corporation, such that the subsidiary has no existence of its own, and the parent uses the corporate existence of the subsidiary to perpetrate a fraud). See Gemco Latinoamerica, Inc. v. Seiko Time Corp., 685 F.Supp. 400, 403 (S.D.N.Y.1988). However, our review of the record shows that Okeelanta alleged independent acts on the part of FPL that affected the relevant market, including its devising a scheme to eliminate co-generating; undertaking a review of the contracts to discover technical reasons to terminate them; attempting, through FPL, to terminate the contracts; and refusing to make capacity payments. As such, we hold FPL's argument here to be unpersuasive.