**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3309

_____

G.S., as an individual and mother and natural guardian of S.S., a minor,

Appellants

v.

PENN-TRAFFORD SCHOOL DISTRICT;
GREGORY CAPOCCIONI; ANTHONY AQUILIO;
MATTHEW HARRIS; SCOTT INGLESE

_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No.: 2-18-cv-00204)
District Court Judge: William S. Stickman, IV
_____

Submitted under Third Circuit LAR 34.1(a)
on April 21, 2020

Before: HARDIMAN, RENDELL and FISHER, <u>Circuit Judges</u>
(Opinion filed: May 13, 2020)

**RENDELL**, *Circuit Judge*:

G.S, parent and guardian of minor S.S., appeals the District Court's grant of

Penn-Trafford School District's motion to dismiss for failure to state a claim. For the

following reasons, we find that the District Court correctly determined that G.S.'s

complaint failed to state a claim, however erred in dismissing the case without leave to

amend or considering futility of amendment. We will therefore remand for further

proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    Factual Background[1]

As a freshman at Penn-Trafford High School, S.S. was the subject of bullying by a

group of her fellow students. The students posted threatening messages on social media

about S.S., directly sent S.S. threatening messages and called S.S. derogatory names.

S.S. reported this bullying to the school's Assistant Principal, Gregory Capoccioni.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we must
"accept[] all well-pleaded allegations in the complaint as true and view[] them in the light
most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d
Cir. 2011). Thus, we review the facts as they are alleged in the complaint.

Capoccioni characterized S.S.'s complaints as "girl drama" and spoke with the students who had been bullying S.S.  A. 33.  The bullying continued the following school year. The same group of students yelled at S.S. and threw food at S.S. during school.  S.S. again reported these incidents to Capoccioni.  Capoccioni told S.S. to ignore them and said there was nothing the school could or would do.

In S.S.'s sophomore year, one of the students discovered that S.S. had spoken to Capoccioni and retaliated against S.S by throwing her into a locker and stating that "snitches get stitches."  A. 35.  S.S. reported the ongoing bullying several more times, and on one occasion, Capoccioni told S.S. to "yell back when the female students yelled mean things to her."  A. 37.  Following that advice, S.S. yelled back at one of her aggressors, A.T., who responded  "I'm going to kick your ass!"  A. 39.  The following day, Capoccioni called S.S. into his office and informed S.S. that there was a rumor a fight would occur between S.S. and A.T that afternoon.  Capoccioni told S.S. that if there were a fight between S.S. and A.T., "S.S. would win because she is taller."  A. 40. During that meeting, S.S. reported that A.T. smoked marijuana.  After S.S. left, Capoccioni called A.T. to his office and questioned her about her marijuana use.  Later that day, A.T. confronted S.S. and asked if she had informed Capocioni about her alleged drug use.  A.T. then attacked S.S. by pushing her head into the wall and punching her in the head and nose, causing S.S. to lose consciousness.  S.S. suffered several serious injuries and was taken to the hospital.

3

S.S. was suspended for three days because of her involvement in the fight. S.S. requested that the suspension be removed from her school record, however the school administrators denied her request. Assistant Superintendent Scott Inglese said that "prior incidents of . . . S.S. telling on others, frequently being in the office reporting bullying incidents, and prior incidents of verbal confrontations with other students factored into the[ir] decision to uphold the suspension." A. 48 (internal quotation marks omitted).

## B. Procedural History

G.S. brought two claims under 42 U.S.C § 1983: (1) a state-created danger claim against the school administrators, and (2) a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against Penn-Trafford School District ("the school district") and its administrators.[2] The defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The District Court granted the defendants' motion, ruling that: (1) G.S. did not plead affirmative actions which demonstrated that the school administrators created or exacerbated S.S.'s danger, and (2) G.S. did not plead sufficient facts to establish that the school district had a custom, practice, or policy of ignoring reports of school bullying. The District Court marked the case as closed without allowing leave to amend. On appeal, G.S. challenges the District Court's Order granting the Rule 12(b)(6) motion and argues that the District Court should

---

[2] The school administrators include: (1) Gregory Capoccioni, Assistant Principal of Penn-Trafford High School, (2) Anthony Aquilio, Principal of Penn-Trafford High School, (3) Matthew Harris, Superintendent of Penn-Trafford School District, and (4) Scott Inglese, Assistant Superintendent of Penn-Trafford School District.

4

have granted her leave to amend to state a First Amendment retaliation claim before closing the case.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's Rule 12(b)(6) dismissal. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010). We review the District Court's dismissal without leave to amend for abuse of discretion. *Id.*

## II.   DISCUSSION

### A.   State-Created Danger

G.S. alleges that the school administrators violated S.S.'s liberty interest under the Due Process Clause of the Fourteenth Amendment by failing to protect S.S. from other students' attacks and by encouraging students to engage in violent behavior. The Due Process Clause generally does not impose upon the state an affirmative duty to protect its citizens from harms caused by private actors. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, the state-created danger doctrine stands as an exception to the rule, which the plaintiff can use to establish liability under § 1983. *See Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).

To allege a state-created danger, G.S. must assert that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v.*

5

*Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (citation omitted). In *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) (en banc), we held that the plaintiff failed to state a state-created danger claim because a school's repeated inaction and failure to protect a student does not constitute an "affirmative act." *Id*. at 177-78. The "affirmative act" requirement "serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself." *Id*. at 179 (alterations and citation omitted).

G.S. reasons that because Capoccioni "took no action to stop [the student] from assaulting S.S. during school hours," he "encourag[ed]" the violent behavior. G.S. Br. 6. This inference is unsupported by our case law. As we have consistently held, inaction does not give rise to an affirmative act, and therefore, Capoccioni's failure to respond to S.S.'s complaints is insufficient to establish liability under *Morrow*.

G.S. also argues that Capoccioni's conduct during his meetings with S.S. put S.S. at an increased risk of danger. This includes his comment that S.S. would win in a fight against A.T. and his act of summoning A.T. to his office after S.S. reported A.T.'s marijuana use. While we agree these are affirmative actions, they did not render S.S. more vulnerable to danger. *See Kaucher v. County of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006) ("[A] specific and deliberate exercise of state authority, while necessary . . . , is not sufficient."). "There must be a *direct causal relationship* between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff more

6

vulnerable to danger than had the state not acted at all." *Id.* (emphasis added) (internal quotation marks and citation omitted).

First, the reason that Capoccioni initially called S.S. into his office was because there was a rumor A.T. was planning on fighting S.S. that afternoon. Thus, Capoccioni's statement that S.S. would win the fight, although inappropriate, did not cause S.S. harm. Second, the complaint does not allege that Capoccioni informed A.T. that S.S. had reported her marijuana use, and thus, we agree with the District Court that it would be "entirely speculative" to infer that Capoccioni caused the fight between A.T. and S.S. A. 16; *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ( "We are not . . . required to accept as true unsupported conclusions and unwarranted inferences.").[3] Accordingly, G.S. failed to state a claim under the state-created danger exception.

## B. *Monell* Liability

To state a claim against the school district under *Monell*, G.S. must allege that it had a "policy or custom" which served as the "proximate cause of the injuries suffered." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990). An official policy is made when

---

[3] Even if we accepted that Capoccioni caused S.S. to be more vulnerable to danger by asking A.T. about her marijuana use, this argument still fails. In order to allege a state-created danger claim, the state actor must have "acted with a degree of culpability that shocks the conscience." *Bright*, 443 F.3d at 281 (citation omitted). Because it does not "shock the conscience" for an Assistant High School Principal to follow up on a student's alleged marijuana use, we reject this argument.

7

a "decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation marks and citation omitted).

First, G.S. argues that the school district had a policy of ignoring reports of bullying, which caused students to be physically assaulted. This argument fails because, as discussed *supra*, a school's failure to respond to reports of bullying cannot give rise to liability under § 1983 because it is not an affirmative act. Second, G.S. argues that the school district improperly suspended S.S. for reporting instances of bullying. Although suspending S.S. was an affirmative act, the suspension did not expose S.S. to danger because the fight with A.T. was already over, and therefore, did not cause S.S. further harm. Accordingly, because G.S. has not adequately pleaded a constitutional violation, G.S. has failed to state a *Monell* claim.

## C.     Leave to Amend

While the District Court correctly determined that G.S.'s complaint failed to state a claim, the District Court erred in dismissing the complaint without granting leave to amend. "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). A district court must provide the plaintiff this opportunity even if the plaintiff does not seek leave to amend. *Id.*

8

G.S. alleges that she requested leave to amend in her response brief to the defendants' motion to dismiss, seeking to add a First Amendment retaliation claim, and she reiterates that request in this Court. The District Court stated in a footnote that G.S.'s complaint "never references the First Amendment" and therefore dismissed her claim because "[i]t does not put the Defendants on notice that Plaintiff is pursuing a First Amendment claim for retaliation." Regardless of whether G.S. properly pled a First Amendment retaliation claim in her complaint, the District Court provided no valid explanation for its dismissal of the case without allowing leave to amend. Appellees argue that G.S. should not be afforded leave to amend because amendment would be futile. The District Court made no finding as to whether amendment would be inequitable or futile as to a claim for First Amendment retaliation and therefore erred in dismissing the complaint without leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, we will remand for further proceedings. *See Dooley v. Wetzel*, -- F.3d--, 2020 WL 1982194, at *6 (3d Cir. Apr. 27, 2020).

## III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's Order marking the case as closed and remand for further proceedings consistent with this opinion.